PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BOARD OF TRUSTEES OF THE OHIO | ) | |
| CARPENTERS' PENSION FUND, | ) | CASE NO.  4:15CV0424 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | |
| RAMUNNO BUILDERS, INC., *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 28 and 31] |

Plaintiff Board of Trustees of the Ohio Carpenters' Pension Fund ("Board") brought this

action against Ramunno Builders, Inc. ("Ramunno Builders") and Ramunno Family Builders,

Inc. ("Ramunno Family Builders") (collectively "Defendants") alleging claims to collect

withdrawal liability under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §1001 *et seq.*, as amended by the Multiemployer Pension Plan Amendments Act of 1980

("MPPAA"), 29 U.S.C. §1381 *et seq.*  These claims are now before the Court upon

cross-motions for summary judgment (ECF Nos. 28 and 31).  The Court has been advised,

having reviewed the record, the parties' briefs, and the applicable law.  For the reasons set forth

below, Plaintiff's motion is granted and Defendants' motion is denied.

(4:15CV0424)

## I.  Stipulated Facts

The stipulated facts[1] are as follows:

1.  The Ohio Carpenters' Pension Fund ("Fund") is a multiemployer pension plan covering employees primarily in the building and construction industry.

2.  On September 30, 1997, Ramunno Builders executed a Carpenters' Agreement.  A copy of the Carpenters' Agreement is attached as Exhibit 1 (ECF No. 27-1).

3.  On August 29, 2014, the Board, through counsel, issued a Demand for Withdrawal Liability Payments ("Demand") to both Ramunno Builders and Ramunno Family Builders [pursuant to 29 U.S.C. § 1399(b)(1)].  A copy of the Demand is attached as Exhibit 2 (ECF No. 27-2).

4.  On or about September 10, 2014, Defendants received the Demand.  A copy of the certified mail "green card" is attached as Exhibit 3 (ECF No. 27-3).

5.  Defendants did not submit a payment to the Fund for the Assessment on or before November 1, 2014.

6.  On November 5, 2014, the Board, through counsel, issued a second Demand for Withdrawal Liability Payments ("Default Notice") to both Ramunno Builders and Ramunno Family Builders.  A copy of the Default Notice is attached as Exhibit 4 (ECF No. 27-4).

7.  Defendants received the Default Notice no later than November 17, 2014.  A copy of the certified mail "green card" is attached as Exhibit 5 (ECF No. 27-5).

---

[1] *See* Statement of Uncontested Facts (ECF No. 27).

2

(4:15CV0424)

8.  Defendants have not submitted any payments to the Fund for the Assessment since receiving the initial Demand.

9.  On or about November 25, 2014, Defendants, through counsel, submitted a letter to the Board's counsel concerning the Demand and Default Notice.  A copy of that letter is attached as Exhibit 6 (ECF No. 27-6).

10.  Defendants have not initiated arbitration related to the Assessment.

## II.  Background

The Fund is an employee benefit plan governed at the time period relevant to this action by the Ohio Carpenters' Pension Plan, as amended and restated effective April 1, 1997 ("Plan Document") (ECF No. 28-1 at PageID #: 150-258).  Provisions related to Employer Withdrawal Liability are set forth in Article XVII of the Plan Document.  ECF No. 28-1 at PageID #: 206-14. Ramunno Builders was a participating employer in the Fund and was obligated to make contributions to fund benefits for employees covered by the pension fund.  In March 2009, Ramunno Builders "completely withdrew" from participation in the pension fund within the meaning of 29 U.S.C. § 1383 due to economic conditions and lack of work.  Affidavit of Nancy Ramunno (ECF No. 30-2) at PageID #: 324-25, ¶ 4; Email message dated September 11, 2014 (ECF No. 30-2 at PageID #: 326); Affidavit of Mark V. Ramunno (ECF No. 30-1) at PageID #: 293, ¶ 4.

In the building and construction industry, a complete withdrawal occurs when the employer ceases to have an obligation to contribute to the fund, but the employer continues to

3

(4:15CV0424)

perform work (or, within five years, resumes performing work) in the jurisdiction of the
collective bargaining agreement of the type for which contributions were previously required.  29
U.S.C. § 1383(b)(2).  In other words, a mere cessation of the obligation to contribute (*e.g.* when a
company is sold or goes out of business) is not sufficient to trigger liability.  Rather, the
employer must continue to perform the same work on a non-contributory (*i.e.*, typically
nonunion) basis.

The Fund avers that, as a result of that withdrawal, Defendants are obligated to pay
withdrawal liability to the pension fund, as required by 29 U.S.C. § 1381(a).  "The MPPAA
requires a contributing employer that withdraws from a multiemployer pension plan to pay its
proportional share of the plan's unfunded vested benefits calculated in accordance with
MPPAA's terms as of the end of the plan year preceding the plan year of withdrawal."  *Stevens
Engineers & Constructors, Inc. v. Iron Workers Local 17 Pension Fund*, Nos. 1:15CV1965,
1:15CV1967, 2016 WL 4479486, at *1 (N.D. Ohio Aug. 25, 2016) (Nugent, J.).  Plaintiff states
that it made a determination of the amount of Defendants' withdrawal liability in compliance
with all applicable statutory requirements and the rules of the pension fund.  Thereafter, Plaintiff
timely notified Defendants of the determination and made a demand to Defendants for payment
in a letter dated August 29, 2014 (ECF No. 27-2).  That letter declares the amount of withdrawal
liability to be $267,446 and sets forth a schedule of monthly payments of $2,698.25 for 143
months and one final payment of $1,411.50 (12 years).  The first payment was due November 1,
2014.

(4:15CV0424)

Defendants failed to make the initial payment on November 1, 2014, as statutorily required.  On November 5, 2014, the Board, through counsel, issued a second Demand for Withdrawal Liability Payments (ECF No. 27-4).  The Default Notice states that Defendants failed to make the initial payment and that they are in default.  The Default Notice also expressly warned Defendants that a failure to cure the default within 60 days would result in a statutory acceleration of the entire liability requiring immediate payment.  Defendants failed to cure and made no payments.  Counsel for Defendants, however, did send correspondence to the Board's counsel on November 25, 2015 (ECF No. 27-6) indicating that Defendants believed all contributions had been satisfied.  It is undisputed that the most generous time limit permitted by the MPPAA for initiating arbitration with the American Arbitration Association lapsed on May 24, 2015.  Reply Memorandum (ECF No. 32) at PageID #: 584-85.

On March 5, 2015, Plaintiff filed a three-count Complaint (ECF No. 1) against Ramunno Builders and Ramunno Family Builders.  Count I is for collection pursuant to 29 U.S.C. § 1401(b).  Plaintiff also claims entitlement to withdrawal liability from both Defendants under controlled group liability (Count II) and successor/alter ego liability (Count III) theories.  On May 4, 2015, Defendants filed a Counterclaim (ECF No. 10) for attorney's fees.

### III.  Standard of Review

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);

5

(4:15CV0424)

*see also Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005).  The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial."  *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute.  An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact to be resolved by a jury."  *Cox v. Ky. Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).  The non-moving party must, to defeat the motion, "show that there is doubt as to [whether] the material facts and that the record, taken as a whole, does not lead to a judgment for the movant."  *Guarino*, 980 F.2d at 403.  In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

The United States Supreme Court, in deciding *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), stated that in order for a motion for summary judgment to be granted, there must be no genuine issue of material fact.  *Id.* at 248.  The existence of some mere factual dispute

(4:15CV0424)

between the parties will not defeat an otherwise properly supported motion for summary

judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  A fact is "material" only if its resolution

will affect the outcome of the lawsuit.  In determining whether a factual issue is "genuine," the

court must decide whether the evidence is such that reasonable jurors could find that the

non-moving party is entitled to a verdict. *Id.*  Summary judgment "will not lie . . . if the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  To withstand

summary judgment, the non-movant must show sufficient evidence to create a genuine issue of

material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990).  The existence of a

mere scintilla of evidence in support of the non-moving party's position ordinarily will not be

sufficient to defeat a motion for summary judgment. *Id.*  This standard of review does not differ

when reviewing cross-motions for summary judgment versus a motion filed by only one party.

*U.S. SEC v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013).

**IV.  Analysis**

**A.    Arbitration**

Defendants failed to timely request arbitration as required by the MPPAA and, therefore,

have waived any defenses to the withdrawal liability assessment or any right to assert a

counterclaim concerning the assessment process. *Amalgamated Lithographers of America

Lithographic Pension Plan v. Unz and Co., Inc.*, 670 F. Supp.2d 214, 226 (S.D.N.Y. 2009).

Once the plan has sent the demand letter, the employer may, within 90 days of receipt, request

that the Board review the withdrawal liability assessment.  29 U.S.C. § 1399(b)(2)(A).

7

(4:15CV0424)

Regardless of any response or non-response to a request for review, an employer desiring to challenge any aspect of a withdrawal liability assessment must timely initiate arbitration. *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 742 (6th Cir. 2013) ("disputes over withdrawal liability between an employer and a fund must be arbitrated").

ERISA requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under [29 U.S.C. §§ 1381-1399] shall be resolved through arbitration." 29 U.S.C. 1401(a)(1). Thus, the Sixth Circuit has held that "arbitration reigns supreme" and "arbitration is the appropriate forum if there is a dispute [regarding] the amount of liability." *Mason & Dixon Tank Lines, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 852 F.2d 156, 164 (6th Cir.1988) (citations omitted).

Defendants argue that the correspondence from their counsel to the Board's counsel, dated November 25, 2014 (ECF No. 27-6) is a request for review pursuant to 29 U.S.C. § 1399(b)(2)(A), and that Plaintiff failed to do anything. ECF No. 30 at PageID #: 281, 284; ECF No. 31 at PageID #: 339-40.[2] Importantly, whether or not Plaintiff responded to a request for review does not alter the statutory time frame for demanding arbitration. For example, in *Cent. States, Se. & Sw. Areas Pension Fund v. Louisville Auto Rail Servs., Inc.*, 67 F. Supp.2d 933, 935 (N.D. Ill. 1999), the plaintiff pension fund sent the employer a notice of withdrawal liability, the

---

[2]  There is substantial verbatim repetition of argument in Defendants' Memorandum in Opposition (ECF No. 30) and Memorandum in Support (ECF No. 31). Therefore, where that occurs, the Court cites only to ECF No. 30.

(4:15CV0424)

employer requested review, and the pension fund did not respond to the request for review. The employer argued that it was not required to initiate arbitration in the absence of a response to its request for review. *Id.* The court rejected this argument by noting that "defendants' argument ignores the plain language of § 1401(a)(1)(B). The relevant date under this subsection is the date of the employer's request, not the date of a review by the pension fund." *Id.*

Since the initial Demand issued on August 29, 2014, Defendants have not initiated arbitration. Defendants argue, without citing to any case law, that "[a]t the time of filing of suit, the Defendants still had the ability to initiate arbitration, however with the pending litigation were unable to initiate arbitration as this matter was under the exclusive jurisdiction of this Honorable Court." ECF No. 30 at PageID #: 281; *see also* ECF No. 30 at PageID #: 284-86.[3] The commencement of a collection action under the MPPAA, however, does not "cut off" an employer's right to initiate arbitration. Rather, the commencement of a collection action has no practical or legal effect on an employer's right to demand arbitration and the same, strict time limits for initiating arbitration apply. *Trustees of The Sheet Metal Workers' Local Union No. 80 Pension Trust Fund v. W.G. Heating & Cooling*, 555 F. Supp.2d 838, 854-55 (E.D. Mich. 2008) (an employer that did not initiate arbitration within the prescribed time limits set by § 1401 was not excused from timely doing so (in order to contest its liability) by the plaintiff's intervening

---

[3] The filing of the case at bar did nothing to prevent Defendants from requesting arbitration or to excuse their failure to do so. As noted by the district court in *Trustees of Amalgamated Ins. Fund v. Vi-Mil, Inc.*, No. 85 CIV. 8424 (LLS), 1987 WL 14665 (S.D.N.Y. Oct. 28, 1987), had the time limit for arbitrating not expired, Defendants could have moved for a stay and for an order compelling arbitration. *Id.* at *3.

(4:15CV0424)

and premature filing of an action in federal court, which the defendant claimed "cut off" the right to arbitrate). The MPPAA unambiguously provides that when an employer fails to timely demand arbitration, the liability is fixed and the employer's right to dispute the assessment is waived:

> If no arbitration proceeding has been initiated pursuant to subsection (a) of this section, the amounts demanded by the plan sponsor under 1399(b)(1) of this title shall be due and owing on the schedule set forth by the plan sponsor. The plan sponsor may bring an action in a State or Federal court of competent jurisdiction for collection.

29 U.S.C. § 1401(b)(1); *Board of Trustees of Dist. No. 15 Machinists' Pension Fund v. Kahle Engineering Corp.*, 43 F.3d 852, 854 (3d Cir. 1994). Under the MPPAA, the consequences for failing to timely initiate arbitration are clear: "the amounts demanded become 'due and owing on the schedule set forth by the plan sponsor,' and the employer is estopped from challenging any factual determination of the plan sponsor concerning the assessment of withdrawal liability. In other words, a failure to initiate arbitration within the statutory time period operates to fix withdrawal liability and foreclose any challenge to its imposition." *UNITE Nat. Retirement Fund v. Veranda Marketing Co.*, Nos. 04 Civ. 9869 (BSJ), 06 Civ. 0055 (BSJ), 2009 WL 2025163, at *3 (S.D.N.Y. July 13, 2009) (internal citations omitted).

### B. Interim Payments

Although Defendants fail to identify any specific "deductions and limitations," they argue they are entitled to certain deductions from the withdrawal liability pursuant to § 17.03(h) of the Plan Document (ECF No. 28-1 at PageID #: 210). ECF No. 30 at PageID #: 287-88. The Court

(4:15CV0424)

disagrees.  Defendants failed to make the interim monthly payments required by the MPPAA and, as a result of this failure, are in default and liable for the full amount of the withdrawal liability assessment.  Pursuant to the MPPAA, once an employer receives an assessment, it must begin payments in accordance with the payment schedule, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2).  The Sixth Circuit has referred to these payments as "interim payments," and commonly referred to this process as the MPPAA's "pay now, dispute later" requirement. *Findlay Truck Line, Inc. v. Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 742 (6th Cir. 2013) (citing *Mason & Dixon Tank Lines, Inc.*, 852 F.2d at 165); *see also Chicago Truck Drivers Union Pension Fund v. Bhd. Labor Leasing*, 406 F.3d 955, 958-59 (8th Cir. 2005). Thus, even if an employer contests the plan sponsor's findings, the MPPAA requires the employer to make interim payments, which are refunded to the employer in the event of a successful challenge.

> "Default" is defined as:
>
> (A)  the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
> (B)  any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. 1399(c)(5).  The plan may then accelerate the payment schedule and make the full amount of the withdrawal liability assessment due and owing immediately.  *Chicago Truck Driver, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Acme Motor*

(4:15CV0424)

*Freight Service, Inc.*, No. 06 C 5981, 2007 WL 2815835, at *4 (N.D. Ill. Sept. 20, 2007) (stating that withdrawal liability is accelerated and immediately due and owning upon default); *Diffley v. Prescription Service, Inc.*, No. 4:94 CV 2231 DDN, 1996 WL 742853, at *2 (E.D. Mo. Feb. 13, 1996) ("[P]ayments must commence no later than 60 days after demand, notwithstanding any request for arbitration or review. . . .  Upon default, the plan is entitled to demand immediate payment of the entire amount due.").

Thus, by virtue of Defendants' uncured default, Defendants are liable for the immediate payment of the $267,446 statutory withdrawal liability assessment as a matter of law.  *Unz & Co. Inc.*, 670 F. Supp.2d at 229-30.

### C.    Defendants Are Liable for Liquidated Damages, Interest, Attorney's Fees, and Costs

Section 1451(b), 29 U.S.C. provides:

> In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).

Section 515 of ERISA, 29 U.S.C. § 1145, states:

> Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collective bargaining agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement.

There is no dispute that the Plan Document here requires Defendants to pay liquidated damages on delinquent contributions equal to "20 percent of the unpaid amount awarded."  ECF No. 28-1 at PageID #: 212, § 17.05(e).  Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), provides:

(4:15CV0424)

> In any action under this subchapter by a fiduciary, for or on behalf of a plan, to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
>
> (A) the unpaid contributions;
>
> (B) interest on the unpaid contributions;
>
> (C) an amount equal to the greater of--
>
>> (i) interest on the unpaid contributions, or
>>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);
>
> (D) reasonable attorney's fees and costs of the action to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

The Sixth Circuit has held that the language of § 1132(g)(2) is mandatory upon a judgment in favor of the Plan.  *Michigan Carpenters Council Health and Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 388 (6th Cir.), *cert. denied*, 502 U.S. 982 (1991); *see also Trustees of Bldg. Laborers' Local 310 Pension Fund v. Able Contracting Group, Inc.*, No. 1:06CV1925, 2008 WL 3889997, at *9 (N.D. Ohio Aug. 19, 2008) (O'Malley, J.).

Because the entire amount has been accelerated as a consequence of Defendants'

13

(4:15CV0424)

default, Defendants are liable for liquidated damages totaling $53,489.20 ($267,446 in withdrawal liability x 20%).  In addition, the Fund is entitled to interest, attorney's fees, and costs pursuant to 29 U.S.C. §1132(g)(2)(B) and (D) and § 17.05(e) of the Plan Document (ECF No. 28-1 at PageID #: 212).

Without providing any documentation related to their purported attempts to collect information, Defendants argue that Plaintiff's unclean hands during discovery precludes its collection of liquidated damages, interest, attorney's fees, and costs.  ECF No. 30 at PageID #: 286-87.  The parties and counsel met with Plaintiff's actuary, who calculated the withdrawal liability, during the discovery phase of this case.  *See* Case Management Plan (ECF No. 17) at PageID #: 84, ¶ 9; Joint Status Report dated October 2, 2015 (ECF No. 24) at PageID #: 99, ¶ 1; ECF No. 32 at PageID #: 591 n. 6.  Defendants also did not avail themselves of the discovery dispute resolution procedures available under Local Rule 37.1.  For these reason, as well as those articulated by Plaintiff (ECF No. 32 at PageID #: 591), the Court finds this argument lacks merit.

### D.  Ramunno Family Builders is Liable as Part of the Same Controlled Group

In Count II of the Complaint, Plaintiff claims entitlement to withdrawal liability from both Defendants under a controlled group liability theory.  ECF No. 1 at PageID #: 4-5.  Under the MPPAA, "all employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." 29 U.S.C. § 1301(b)(1).  The MPPAA employs the Internal Revenue Code"s ("IRC") "controlled group" standards to determine whether entities are under

(4:15CV0424)

common control and thus liable as a single employer.  Pursuant to IRC regulations, three types of controlled groups exist:  "(1) parent-subsidiary; (2) combined; and (3) brother-sister." *I.A.M. Nat. Pension Fund v. TMR Realty Co., Inc.*, 431 F. Supp.2d 1, 11-12 (D.D.C. 2006) (citing 26 C.F.R. § 1.414(c)-2).  A brother-sister controlled group exists "if the same five or fewer people own both a *controlling interest* in, and *effectively control* the same group of businesses."  *Id.* at 12 (emphasis in original) (citing 26 C.F.R. § 1.414(c)-2(c)).  In the case of a corporation, "a 'controlling interest' is defined to constitute ownership of 80% o[r] more (by value or voting power) of the corporation's stock."  *Id.* (citing 26 C.F.R. § 1.414(c)-2(b)(2)(A)).  "Effective control" is demonstrated by identical ownership of at least 50% of the combined voting power of all the voting stock of a corporation and by ownership of at least 50% of the profits, interest or capital interest of a partnership.  *See* 26 C.F.R. § 1.414(c)-2(c)(2).

Ramunno Builders and Ramunno Family Builders offer no opposition to Plaintiff's argument that "[b]ecause both companies have a shared 'controlling interest' in the Defendants, both companies are part of a brother-sister controlled group and Ramunno Family Builders is jointly and severally liable for Ramunno Builder's withdrawal liability."  Memorandum in Support (ECF No. 28) at PageID #: 142.  Therefore, Plaintiff's Motion with respect to this claim is granted for the reasons articulated by Plaintiff.  *See* ECF No. 28 at PageID #: 141-42.

### E.    Defendants' Demand for an "Abatement and/or Adjustment" is Inapplicable

Finally, Defendants argue that they are entitled to an "abatement" of the withdrawal liability assessment pursuant to 29 U.S.C. § 1387 based upon a resumption of covered activities

15

(4:15CV0424)

and contributions to the Fund "[o]n or before November 2014."  ECF No. 30 at PageID #: 288-

89; ECF No. 30-1 at PageID #: 293, ¶ 2.  The Court disagrees for three reasons.

First, as with their other defenses, Defendants' failure to timely demand arbitration

forecloses their ability to raise this argument here.  By failing to initiate arbitration, the employer

waives "any right to contest the fact or amount of withdrawal liability" under the MPPAA and

corresponding case law. *Brown v. Capital Restoration & Painting Co.*, No. 4:13CV00189 RWS,

2013 WL 6230101 (E.D. Mo. Dec. 2, 2013) (citing *Diffley*, 1996 WL 742853, at *2).

Second, the concept of abatement exists to encourage employers, that (1) have partially or

completely withdrawn from a multiemployer pension fund and (2) are currently making required

monthly withdrawal liability payments, to re-enter the fund while reducing or eliminating their

"*future* liability payments."  29 C.F.R. § 4207.1(a) (emphasis added).  In the case at bar, there are

no "future liability payments" to abate.

Third, because Defendants failed to make any of their required monthly withdrawal

liability payments, they have failed to fulfill any of the applicable regulatory requirements.  The

abatement regulations presume that a withdrawn employer is currently meeting their statutory

obligation to make withdrawal liability payments and will continue to make payments during the

pendency of its application for abatement or, alternatively, has placed 70% of its future payments

in bond/escrow.  29 C.F.R. § 4207.4.

16

(4:15CV0424)

## V.  Conclusion

Viewing Defendants' probative evidence and all reasonable inferences drawn therefrom in the light most favorable to Defendants, the Court concludes that there is no genuine issue of material fact and Plaintiff is entitled to a judgment as a matter of law.  For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 28) is granted, and Defendants' Motion for Summary Judgment (ECF No. 31) is denied.  Final judgment will be entered in favor of Plaintiff and against Defendants on the Complaint (ECF No. 1) and Counterclaim (ECF No. 10).

Plaintiff's request for leave to supplement the record with the amount of attorney's fees and costs owed after the entry of judgment in this matter (ECF No. 28 at PageID #: 140) is granted without opposition.

IT IS SO ORDERED.

 September 12, 2016          */s/ Benita Y. Pearson*
Date        Benita Y. Pearson
       United States District Judge

17